Charles J. DAVOREN, Appellee,

v.

IOWA EMPLOYMENT SECURITY COM-
MISSION, a/k/a Iowa Department of
Job Service and Walgreen Company,
Appellants.

No. 62324.

Supreme Court of Iowa.

April 25, 1979.

Walter F. Maley and Blair H. Dewey, Des Moines, for appellants.

Shirley G. Steele, Des Moines, for appellee.

Considered by LeGRAND, P. J., and UH-
LENHOPP, HARRIS, McGIVERIN and
LARSON, JJ.

HARRIS, Justice.

A full-time law student worked part-time
as a registered pharmacist. When laid off
from his part-time job he applied for unem-
ployment benefits under § 96.6(2), The
Code, 1975. The employment security com-

mission disallowed the application on the basis of a departmental rule. On the student's appeal to the trial court this disallowance was reversed and the benefits were ordered paid. We reverse the trial court and remand the case for reinstatement of the commission's decision.

The claimant, Charles Davoren (Davoren), was employed by a retail pharmacy which owned and operated a number of stores in Des Moines. Davoren was scheduled to work 18 hours a week at an hourly rate. He was also on call for weekends and while regular employees were on vacation. He was laid off from that employment November 24, 1975.

As a full-time law student Davoren carried 16 semester hours and, at the time of his application, was a senior in law school. He had classes from 9:00 a. m. to 2:00 p. m. three days a weeks and from 9:00 until noon two days a week. He could accept work after 2:00 p. m. and all day Saturday and Sunday.

Davoren's application ran afoul the statutory requirement that he show he was ". . . available for work, and . . . earnestly and actively seeking work . . ." § 96.4(3), The Code, 1975. The commission found Davoren had made no such showing, citing rule 370–4.23(5), Iowa Administrative Code, which then provided:

> Full-time students devoting the major portion of their time and efforts to their studies are deemed to have no reasonable expectancy of securing employment.

Davoren's claim is not aided by an amendment to this rule, effective December 29, 1976. The rule thereafter provided:

> Full-time students devoting the major portion of their time and efforts to their studies are deemed to have no reasonable expectancy of securing employment except if the students are available to the same degree and to the same extent as they accrued wage credits they will meet the eligibility requirements of the law.

The change in the rule came after Davoren's application. It is decisive of his claim that the amended rule does not apply in his case.

In reversing the disallowance, the trial court held that the rule, as it existed at the time, did not apply to full-time students who were employed part-time, only to full-time students who were employed full-time. The trial court then decided Davoren's claim on a theory similar to that implicit in the rule as it was later amended, noting:

> . . . Upon [Davoren] being laid off, he did hold himself out as available for work to the same degree as he had while he was gainfully employed; that is Monday through Friday after 2:00 p. m. and all day Saturdays and Sundays. Therefore, [Davoren] was in compliance with § 69.4–3 in that he was available for work."

Throughout the administrative proceeding, and before the trial court, Davoren contended that the administrative rule denies equal protection of law.

■ I. We are obliged to disregard a contention which Davoren raises for the first time in this appeal. In his brief before us Davoren seeks to argue that the promulgation of rule 370–4.23(5), as it existed at the time of his application, was an impermissible exercise of the rule-making authority delegated to the agency by the legislature. He now claims that the rule is contrary to the legislative intent expressed in chapter 96, The Code, 1975.

It is axiomatic that we will not consider questions, including constitutional questions, raised for the first time on appeal. *Lemon v. City of Muscatine,* 272 N.W.2d 429, 430 (Iowa 1978).

■ II. The burden of proof is upon a claimant seeking unemployment compensation. *Walles v. Iowa Employment Security Commission,* 219 N.W.2d 539, 540 (Iowa 1974); *Ritchey v. Iowa Employment Security Commission,* 216 N.W.2d 580, 584 (Iowa 1974). In this "contested case" under the Iowa administrative procedure act our review is not de novo. We have said:

> . . . Our task is to review the record in the manner specified in § 17A.19(7) and make anew the judicial

determination specified in § 17A.19(8). Our review is limited, as the district court's review should have been, to the record made before the hearing officer. *Hoffman v. Iowa Dept. of Transp.,* 257 N.W.2d 22, 25 (Iowa 1977).

■ III. We cannot subscribe to the trial court's determination that the rule upon which the commission relies did not apply to a full-time student seeking unemployment compensation as a part-time worker. The trial court did not give any rationale for this determination. A reading of the rule itself gives no clue as to how such a conclusion could be reached. The rule is addressed to all full-time students; it does not by its terms distinguish between full-time and part-time employees.

Perhaps the trial court was prompted in part by the subsequent amendment to the rule which would have accorded Davoren the benefits he seeks. But even the rule as later amended does not distinguish between full-time and part-time employees. The amendment was adopted to change the rule, not merely to clarify it. See *Barnett v. Durant Community School Dist.,* 249 N.W.2d 626, 629 (Iowa 1977). Accordingly, we reject the trial court's finding that the rule was inapplicable to full-time students employed part-time.

■ IV. Consideration of Davoren's equal protection challenge is governed by well-settled principles:

The nature of the burden upon one attacking a statute on equal protection grounds depends upon whether the classification is one subject to close judicial scrutiny or traditional equal protection analysis. Since the classification here is not based upon sex, race, alienage or national origin and does not involve fundamental rights, it is subject to the traditional equal protection standard. [Authority.] Under that test the classification must be sustained unless it is patently arbitrary and bears no rational relationship to a legitimate governmental interest. Id. It does not deny equal protection simply because in practice it results in some inequality; practical problems of government permit rough accommodations; and the classification will be upheld if any state of facts reasonably can be conceived to justify it. [Authority.] The legislature has wide discretion in deciding classifications. [Authority.] Our view of the wisdom of the legislation is irrelevant. [Authority.]

*Lunday v. Vogelmann,* 213 N.W.2d 904, 907 (Iowa 1973). As in *Lunday* the question here does not involve a fundamental right. See *Idaho Department of Employment v. Smith,* 434 U.S. 100, 101, 98 S.Ct. 327, 328, 54 L.Ed.2d 324, 327 (1977). Accordingly, the traditional equal protection standard should be applied as stated in *Hawkins v. Preisser,* 264 N.W.2d 726, 729 (Iowa 1978):

. . . [T]he statute has the presumption of constitutionality, the burden is upon the attacker to prove beyond a reasonable doubt that the statute violates equal protection concepts, and we do not pass upon the wisdom of the statute. [Authority.] In order to prove a statute violates equal protection a plaintiff must show there is no reasonable basis for the classification in the statute. [Authority.]

We apply the same standards in testing an equal protection claim against an administrative regulation as are applied in testing an equal protection claim against a statute. *Matter of Estate of Evans,* 255 N.W.2d 99, 104 (Iowa 1977); *Avery v. Peterson,* 243 N.W.2d 630, 633–634 (Iowa 1976).

There have been a number of cases from other jurisdictions involving students who have attempted to collect unemployment benefits. Because these cases tend to turn on the differing local statutes there is a limit to their value in interpreting our own. Nevertheless two conclusions have been drawn:

(1) Claimants attending school have been markedly unsuccessful in their attempts to secure unemployment benefits. The courts usually hold that such claimants are not eligible for benefits because they are not available for work, and claimants' contentions that they will rearrange their schedules to meet the needs of offered employment have been re-

buffed on the ground that they would not be able to rearrange their schedules so as to be able to work on rotating shifts. Moreover, it has been held that claimants' statements that if necessary they would quit school to accept employment need not be accepted at face value even though uncontroverted.

(2) It has been held that a claimant was eligible for benefits despite the fact that he was attending college when he filed his claim, where he stated that he would rearrange his class hours or drop out of school entirely if necessary to accept employment.

Annot., 35 A.L.R.3d 1129; § 7 at page 1154.

■ In *Idaho Department of Employment v. Smith,* supra, an Idaho rule, in the form of a statute, was challenged as a denial of equal protection. The Idaho rule applied only to students attending school during the daytime and was therefore seemingly more arbitrary and less rational than the rule challenged here by Davoren. Yet the United States Supreme Court rejected the challenge, finding that the rule ". . . serves as a predictable and convenient means for distinguishing between those who are likely to be students primarily and part-time workers only secondarily and thus ineligible for unemployment compensation . . . without the necessity of making costly individual eligibility determinations which would deplete available resources." 434 U.S. at 101–102, 98 S.Ct. at 328, 54 L.Ed.2d at 327–328. This justification for the rule provides a rational basis for upholding its constitutionality. For, as the court recognized, ". . . [i]n a world of limited resources, a State may legitimately extend unemployment benefits only to those who are willing to maximize their employment potential by not restricting their availability during the day by attending school. . . ." 434 U.S. at 101, 98 S.Ct. at 328, 54 L.Ed.2d at 327.

Davoren attempted before the administrative hearing officer to rebut the presumption created by the administrative rule. The administrative hearing officer found Davoren had failed in this attempt.

From the transcript of testimony before that officer we find substantial legal evidence from which the officer could have so found.

When laid off, Davoren only applied at retail pharmacies. He did not apply for work at any of the pharmacies at the local hospitals. And he did not apply at any of the ten outlets in Des Moines of a competitor of his former employer. Davoren sought work in the area where he lives. Davoren did not volunteer to rearrange his class schedule. Neither did he offer to quit school.

We do not suggest that these efforts were a prerequisite for benefits. But, from the foregoing, the hearing officer could conclude that Davoren had not rebutted the presumption.

■ The departmental rule was properly applied in Davoren's case, raising a rebuttable presumption of unavailability. The commission found this presumption was not rebutted. This finding was binding on the trial court and on us. See *Walles v. Iowa Employment Security Commission,* supra, 219 N.W.2d at 540.

The judgment of the trial court is reversed and the case remanded for reinstatement of the commission's decision.

REVERSED AND REMANDED.